Clifford D. Sethness (Bar No. 212975)
Juan Carlos Gonzalez (Bar No. 280446)
MORGAN, LEWIS & BOCKIUS LLP
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA  90071-3132
Tel:  213.612.2500
Fax:  213.612.2501
*csethness@morganlewis.com*
*carlos.gonzalez@morganlewis.com*

Eric Meckley (Bar No. 168181)
MORGAN, LEWIS & BOCKIUS LLP
One Market Street, Spear Tower
San Francisco, CA  94105
Tel:  415.442.1000
Fax:  415.442.1001
*emeckley@morganlewis.com*

Attorneys for Plaintiff
PACIFIC MARITIME ASSOCIATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC MARITIME ASSOCIATION, a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, LOCAL 10, an unincorporated labor organization,<br><br>Defendant. | Case No.  3:19-cv-7826<br><br>**COMPLAINT FOR CONFIRMATION AND ENFORCEMENT OF LABOR ARBITRATION AWARD** |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB1/ 110196146.1

COMPLAINT
CASE NO. 3:19-CV-7826

Plaintiff PACIFIC MARITIME ASSOCIATION, for its Complaint against Defendant INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, LOCAL 10, alleges as follows:

**JURISDICTION**

1. This is an action to confirm and enforce labor arbitration awards issued pursuant to a collective-bargaining agreement. This action arises under Section 301 of the Labor Management Relations Act of 1947, as amended (29 U.S.C. § 185). Jurisdiction is conferred upon this Court by the provisions of that section.

2. Plaintiff PACIFIC MARITIME ASSOCIATION ("PMA") is, and at all times mentioned herein was, a non-profit corporation organized and existing under and by virtue of the laws of the State of California. PMA maintains its principal office at 555 Market Street, San Francisco, California.

3. PMA is a multi-employer collective bargaining association whose members include stevedoring companies, terminal operators, and maintenance and repair contractors that employ dockworkers, such as longshore workers, throughout the United States Pacific Coast, including at the Military Ocean Terminal Concord (MOTCO), which is located in the San Francisco Bay Area of California. PMA represents these member company employers in their collective bargaining relations with the labor organizations representing dockworkers, in the negotiation of collective-bargaining agreements, and the administration and enforcement of the provisions thereof. Those PMA members employing dockworkers on the Pacific Coast are, and at all times mentioned herein were, employers in an industry affecting commerce, as defined in Section 501 of the Labor Management Relations Act of 1947 (29 U.S.C. § 142) and Section 2 of the National Labor Relations Act (29 U.S.C. § 152) and within the meaning of Section 301 of the Labor Management Relations Act (29 U.S.C. § 185).

4. The International Longshore and Warehouse Union ("ILWU") is an unincorporated association commonly known as a labor union and maintains its principal offices in San Francisco, California. The ILWU is, and at all times mentioned herein was, the duly certified collective bargaining representative for dockworkers employed by PMA members on

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB1/ 110196146.1

1

COMPLAINT
CASE NO. 3:19-CV-7826

the Pacific Coast. The ILWU, on behalf of itself and each of its Longshore Division locals in California, Oregon and Washington, negotiates and enters into the collective bargaining agreements described below with PMA, covering terms and conditions of employment of longshore workers employed by PMA's members on the Pacific Coast. The ILWU is, and at all times mentioned herein was, a labor organization representing employees in an industry affecting commerce, as defined in Section 501 of the Labor Management Relations Act (29 U.S.C. § 142) and Section 2 of the National Labor Relations Act (29 U.S.C. § 152) and within the meaning of Section 301 of the Labor Management Relations Act (29 U.S.C. § 185).

5. Defendant International Longshore and Warehouse Union, Local 10 ("Local 10") is an unincorporated association commonly known and referred to as a labor union and maintains its principal offices in San Francisco, California. Local 10 is a Longshore Division local of the ILWU and is, and at all times mentioned herein has been, a representative of longshore workers who are employed by and perform work for PMA members in the San Francisco Bay Area, including at MOTCO. As such, Local 10 is, and at all times mentioned herein was, a labor organization representing employees in an industry affecting commerce, as defined in Section 501 of the Labor Management Relations Act (29 U.S.C. § 142) and Section 2 of the National Labor Relations Act (29 U.S.C. § 152) and within the meaning of Section 301 of the Labor Management Relations Act (29 U.S.C § 185).

**INTRADISTRICT ASSIGNMENT**

6. A substantial part of the events or omissions giving rise to the claims in this action occurred in the counties of San Francisco and Contra Costa. This action therefore should be assigned to the San Francisco Division or the Oakland Division pursuant to Civil Local Rule 3-2(d).

**FACTUAL BACKGROUND**

7. The ILWU, on behalf of its Longshore Division locals in California, Oregon and Washington, including Defendant Local 10, and all employees performing work thereunder, and PMA on behalf of its members, entered into the PACIFIC COAST LONGSHORE CONTRACT DOCUMENT 2019-2022, effective as of July 1, 2019 (hereinafter the "PCLCD"). The PCLCD

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB1/ 110196146.1

2

COMPLAINT
CASE NO. 3:19-CV-7826

covers, and governs the terms and conditions of employment for, longshore workers employed by PMA members and who perform work for those members throughout the United States Pacific Coast, including at MOTCO.

8. MOTCO is a U.S. military installation. The 834th Transportation Battalion of the U.S. Army Military Surface Deployment and Distribution Command (834th) operates at MOTCO and is in command of MOTCO's premises. MOTCO is one of two strategic ammunition ports in the United States, and is the only ammunition port on the West Coast. From MOTCO, the 834th distributes military surface cargo from Continental United States (CONUS) depots to forward based military units across the Pacific Theatre. Outgoing munitions are essential military cargo that need to be loaded in a timely manner to meet operational necessities or military readiness plans.

9. The 834th is part of the United States Transportation Command (USTRANSCOM). USTRANSCOM has a contract with Marine Terminals Corporation (MTC) (also known as Ports America) to provide labor to operate military equipment used to load, unload, and move cargo and munitions from vessels and rail cars at MOTCO. This contract labor is essential to fulfilling the 834th's military objectives at MOTCO.

10. MTC is a PMA member company and is covered and protected by the PCLCD.

11. Section 8.51 of the PCLCD states, "Each dispatching hall shall furnish on any day required up to at least the agreed to number of gangs and supporting men, as well as up to any number agreed to, or arrived at through Contract procedures, in the future."

12. Section 11 of the PCLCD, entitled "NO STRIKES, LOCKOUTS, AND WORK STOPPAGES," provides, in relevant part:

> 11.1 There shall be no strike, lockout or work stoppage for the life of this Agreement.
>
> 11.2 The Union or the Employers, as the case may be, shall be required to secure observance of this Agreement.
>
> 11.3 How work shall be carried on.
>
> 11.31 In the event grievances or disputes arise on the job, all men and gangs shall continue to work as directed by the employer in accordance with the specific provisions of the Agreement or if the matter is not covered by the Agreement, work shall be continued as directed by the employer.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB1/ 110196146.1

3

COMPLAINT
CASE NO. 3:19-CV-7826

13. Section 17 of the PCLCD, entitled "JOINT LABOR RELATIONS COMMITTEES, ADMINISTRATION OF AGREEMENT, AND GRIEVANCE PROCEDURES," provides a mandatory procedure for the presentation, adjustment and settlement of grievances, with binding arbitration as the final step.

14. Section 17 provides, in relevant part:

17.15 The grievance procedure of this Agreement shall be the exclusive remedy with respect to any disputes arising between the Union or any person working under this Agreement or both, on the one hand, and the Association or any employer acting under this Agreement or both, on the other hand, and no other remedies shall be utilized by any person with respect to any dispute involving this Agreement until the grievance procedure has been exhausted.

17.16 Pending investigation and adjudication of such disputes work shall continue and be performed as provided in Section 11.

17.261 Any decision of a Joint Port or Joint Area Labor Relations Committee or of an Area Arbitration Panel claimed by either party to conflict with this Agreement shall immediately be referred at the request of such party to the Joint Coast Labor Relations Committee (and, if the Joint Coast Labor Relations Committee cannot agree to the Coast Arbitrator, for review). The Joint Coast Labor Relations Committee, and if it cannot agree, the Coast Arbitrator, shall have the power and duty to set aside any such decision found to conflict with the Agreement and to finally and conclusively determine the dispute. It shall be the duty of the moving party in any case brought before the Coast Arbitrator under the provisions of this Section 17.261 to make a prima facie showing that the decision in question conflicts with this Agreement, and the Coast Arbitrator shall pass upon any objection to the sufficiency of such showing before ruling on the merits.

17.2611 Any formal decision of an Area Arbitration Panel over disputes regarding violations of Subsection 11.1 with which either party is dissatisfied shall immediately be referred, at the request of such party, to the Joint Coast Labor Relations Committee. Such dispute shall be processed by the Joint Coast Labor Relations Committee upon receipt (including electronic) by the Joint Coast Labor Relations Committee and moved from step to step within forty-eight (48) hours as follows: (a) Joint Coast Labor Relations Committee meeting within twenty-four (24) hours; and (b) Coast Arbitrator within twenty-four (24) hours. Such hearing shall include all information regarding the dispute. At the request of either party, the Coast Arbitration shall be held at the site of the dispute. If such request is made, the timeline shall be extended by twenty-four (24) hours.

17.282 If the local grievance machinery becomes stalled or fails to work, the matter in dispute can be referred at once by either the Union or the Association to the Joint Coast Labor Relations Committee for disposition.

17.52 Powers of arbitrators shall be limited strictly to the application and interpretation of the Agreement as written. The arbitrators shall have jurisdiction to decide any and all disputes arising under the Agreement including cases dealing with the resumption or continuation of work.

17.55 All decisions of the arbitrators, except as provided in Section 17.261 and 17.6, shall be final and binding upon all parties. Decisions shall be in writing signed by the arbitrator and delivered to the respective parties.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB1/ 110196146.1

4

COMPLAINT
CASE NO. 3:19-CV-7826

17.57 All decisions of arbitrators shall be observed and/or implemented. No decision, interim or formal, can be appealed unless it is observed and/or implemented.

17.61 When a grievance or dispute arises on the job and is not resolved through the steps of Sections 17.21 and 17.22, and it is claimed that work is not being continued as required by Section 11, a request by either party shall refer the matter to the Area Arbitrator, assigned on a random basis, (or by agreement of the Joint Coast Labor Relations Committee to the Coast Arbitrator) for his consideration in an informal hearing; such referral may be prior to formal disagreement in any Joint Labor Relations Committee or upon failure to agree on the question in the Joint Area Labor Relations Committee. Such hearing may be ex parte if either party fails or refuses to participate, provided that the industry Area Arbitrator may temporarily delay an ex parte hearing to permit immediate bona fide efforts to settle an issue without a hearing.

17.62 The industry Area Arbitrator shall act with his powers limited strictly to the application and interpretation of the Agreement as written. The parties shall have the right to present such views as they wish to the arbitrator, but it shall not be necessary to have a shorthand or stenotype reporter present to report the proceedings nor shall employment of counsel be necessary. The arbitrator, on this basis, shall promptly issue an oral interim ruling with respect to the grievance or dispute and thereafter confirm it in writing. An interim ruling shall be binding on the parties regarding the particular issue on the particular ship on the particular occasion but shall not be a precedent for other cases. Any interim ruling shall be binding unless reversed by a contrary decision after a formal hearing.

17.63 If either party is dissatisfied with the interim ruling, the question shall be immediately referred at the request of such party to the Area Arbitration Panel for hearing and decision in accordance with the normal procedure under Section 17.5 of this Agreement; the Area Arbitration Panel shall then proceed as if there had been a failure to agree on the question by the Joint Port Labor Relations Committee, provided that the Area Arbitration Panel may temporarily delay a hearing to permit prompt bona fide efforts to settle the question in the Port or Area Joint Labor Relations Committee.

15. Local 10 and its officers and the longshore workers they represent are under a duty to abide by the above-mentioned provisions of the PCLCD.

**COUNT ONE**

16. On November 25, 2019, Local 10 staged an all-day work stoppage whereby all longshore workers employed by MTC refused to work as directed at MOTCO. Local 10 engaged in the work stoppage to protest a recent change to longshore workers' parking arrangements that was announced by the 834th on November 15, 2019.

17. On November 25, 2019, on MTC's behalf, PMA verbally lodged a complaint against Local 10 for engaging in a unlawful work stoppage in violation of the PCLCD. The dispute was heard by Thomas A. Clark, the parties' on-duty Northern California Area Arbitrator, that morning.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB1/ 110196146.1

5

COMPLAINT
CASE NO. 3:19-CV-7826

18. At the end of the arbitration hearing on November 25, 2019, Arbitrator Clark orally issued Decision Number NCAA-0021-2019, finding, as later memorialized in writing on November 26, that "ILWU Local 10 officers and members are guilty of violating Section 11 of the Agreement for creating an illegal work stoppage for refusing to turn as directed by management." Arbitrator Clark further ordered that "[t]he Union shall cease and desist from any further disruptions and take all substantive issues through the grievance machinery." A true and correct copy of Decision Number NCAA-0021-2019 is attached hereto as **Exhibit 1**.

19. After Arbitrator Clark issued his oral decision, Local 10 again engaged in an unlawful work stoppage that very same day. Specifically, the longshore workers refused to return to work following their lunch period on November 25. PMA promptly notified Arbitrator Clark that afternoon that Local 10 was refusing to implement his award and was in violation of the PCLCD's grievance and arbitration provisions.

20. A second hearing was held before Arbitrator Clark on November 25 to determine whether Local 10 was refusing to implement arbitration award NCAA-0021-2019, in violation of Section 17.57 of the PCLCD. At the conclusion of the hearing, Arbitrator Clark orally issued Decision Number NCAA-0022-2019, finding, as later memorialized in writing on November 26, 2019, that "ILWU Local 10 is guilty of violating Section 17.57 of the Agreement for failing to implement the previous interim ruling" and referred the matter to the Joint Coast Labor Relations Committee (CLRC) for ruling because "the grievance machinery has failed to work as outlined in Section 17.282." A true and correct copy of Decision Number NCAA-0022-2019 is attached hereto as **Exhibit 2.**

21. Later in the afternoon on November 25, 2019, per Arbitrator Clark's Decision Number NCAA-0022-2019, PMA escalated the matter to the CLRC for ruling. The CLRC heard the matter later that day but was deadlocked in its decision. As a result, in accordance with the PCLCD the matter was referred by the CLRC to the Coast Arbitrator, John Kagel, for a final decision on Local 10's obligation to implement Decision Number NCAA-0021-2019, even if Local 10 wished to appeal it. Coast Arbitrator Kagel heard the matter by telephonic conference that day. Coast Arbitrator Kagel issued Decision Number C-07-2019 that same day, holding that

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB1/ 110196146.1

6

COMPLAINT
CASE NO. 3:19-CV-7826

"ILWU Local 10, its officers and members, are in continued violation of Section 11 of the Agreement by failing to observe interim Area Arbitrator Clark's interim decisions and are hereby ordered to observe those Awards." The Coast Arbitrator's decision and award is final and binding under the terms of the PCLCD. A true and correct copy of Decision Number C-07-2019 is attached hereto as **Exhibit 3.**

22. Despite the Coast Arbitrator's final and binding decision and directive that Local 10 observe the Area Arbitrator's awards and not engage in any additional work stoppages or work disruptions, Local 10 represented that it would continue to engage in work stoppages on Monday, December 2, 2019. Specifically, after Coast Arbitrator Kagel issued his decision, Local 10 insisted on an in-person meeting with MTC to discuss the matter. When MTC advised Local 10 representatives that the managers responsible for the MOTCO operation were unavailable to meet in person because they were at another port but were otherwise available to meet by phone, Local 10 representatives responded with the threat, "good luck fulfilling any labor on Monday."

23. Although it is not certain Local 10 will follow through on its threat, the possibility that Local 10 will continue to refuse to work at MOTCO cannot be ignored. Local 10's continuing work stoppages violate the PCLCD and the Area and Coast Arbitrator Awards. By refusing to work as directed at MOTCO, Local 10's actions have interfered with, and will continue to interfere with, the ability of the 834th's vitally important military objective of transporting munitions for national security purposes.

24. Without an enforcement order from this Court, it is very likely that Local 10 will continue violating the PCLCD and the Arbitrators' decisions, causing irreparable harm to MTC, its U.S. military customer, and national security interests.

25. The Coast Arbitrator's Decision Number C-07-2019 is final and binding and should be enforced by this Court.

WHEREFORE, PMA prays for judgment against Defendant Local 10, as follows:

1. That the Court confirm and enforce the Coast Arbitrator's Decision Number C-07-2019 (which in turn requires Local 10 to observe and implement Area Arbitration Decision Numbers NCAA-0021-2019 and NCAA-0022-2019);

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB1/ 110196146.1

7

COMPLAINT
CASE NO. 3:19-CV-7826

2. That the Court order Local 10 to immediately comply with the Coast Arbitrator's Decision Number C-07-2019 (which in turn requires Local 10 to immediately comply with Area Arbitration Decision Numbers NCAA-0021-2019 and NCAA-0022-2019);

3. That judgment be entered against Local 10;

4. That PMA be awarded costs of suit incurred herein, including all applicable reasonable attorneys' fees and costs; and

5. That PMA be awarded all such other relief as the Court may deem just and proper.

Dated: November 29, 2019                    MORGAN, LEWIS & BOCKIUS LLP


                                            By    / s / Eric Meckley
                                                  Eric Meckley
                                                  Attorneys for Plaintiff
                                                  PACIFIC MARITIME ASSOCIATION

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB1/ 110196146.1

8

COMPLAINT
CASE NO. 3:19-CV-7826

# EXHIBIT 1

| | |
|---|---|
| IN THE MATTER OF CONTROVERSY | NCAA-0021-2019 |
| BETWEEN | INTERIM DECISION |
| PACIFIC MARITIME ASSOCIATION | Of |
| AND | Thomas A. Clark |
| | Northern California Area Arbitrator |
| INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, LOCAL 10 | Under the Authority of the Pacific Coast Longshore Contract Document 2014-2022 |
| Re: Concord Naval Weapons Station Parking Lot | 11/25/19 Concord, California |

I received a call from Jaime Villanueva, PMA, informing the Arbitrator that the Employers were moving under Section 17.61 claiming an illegal work stoppage has occurred on the job at the MOTCO parking lot at the Concord Naval Weapons Station in violation of Section 11 of the Agreement.

**APPEARANCES:**

FOR THE EMPLOYERS:   Mr. Jaime Villanueva
                                            Pacific Maritime Association

FOR THE UNION:             Mr. Melvin Mackay, President
                                            Mr. Frank Gaskin, Business Agent
                                            ILWU Local 10

ALSO PRESENT:              Ms. Barry Thamert, Ports America (Site Manager)
                                            Ms. Nuria Peacoat, MOTCO Personnel
                                            Colonel Yankee, US Military
                                            Lieutenant House, US Military
                                            Mr. William Bernard Bowden, Local 91 Walking Boss
                                            Mr. Ryan Murphy, Local 75 Business Agent

ISSUE:   Whether Local 10 created an illegal work stoppage under Section 11.31 of the Agreement by refusing to turn to regarding a dispute involving MOTCO CNWS parking lot.

11.31 In the event grievance or disputes arise on the job, all men and gangs shall continue to work as directed by the employer in accordance with the specific provisions of the Agreement or if the matter is not cover by the Agreement, work shall continue as directed by the Employer.

On Friday 11/22/19, Local 10 was informed by PMA by way of a phone conversation that the Military would no longer allow visitors / Local 10 members to park in the outside parking lot.

The Employers informed Local 10 that its members would be allowed by escort of the Walking Boss to park their vehicles inside the terminal parking lot because according to witness Mr. Thamert POA, who testified he had received a letter from the Department of the Army Military their concern was that

longshore vehicles could be ticketed and towed away by the city of Concord.

Letter – November 5, 2019

Department of the Army Military
Surface Deployment and Distribution Command
834 Transportation Battalion
410 Norman Avenue Concord, California

Dear Mr. Thamert:

The 834th Transportation Battalion Commander has authorized Union labor parking at Wharf Three and the E-106 parking lot. Union labor employees are expected to park in these authorized areas from this day forward. Longshoremen working on Wharf Three are authorized to park at the Wharf. All other Longshoremen are authorized to park in the parking lot E-106 and can be bussed to their work locations. The Visitor Control Center (VCC) parking lot is not authorized for long-term parking-individuals who violate these instructions can expect to be ticketed or towed.

Work start time will begin with a 0800 safety brief. Personnel working at Wharf Three will receive a safety brief at the Wharf at 0800. All others will receive a safety brief at building E-106 at 0800.

The work stop times for personnel at the wharf will be 1130 for lunch and 1630 at the end of the shift. All others will stop work at 1130 for lunch and 1630 at the end of the shift at building E-106.

The point of contact for this action will be Mr. David W. Arange. He may be contacted at phone number 925-246-4146 or via email at david.w.arange.civ@mail.mil.

Sincerely,

Thomas D. House
Lieutenant Commander, US Navy
Executive Officer

DISCUSSION:

The Employers stated the Arbitrator is required to only handle three on the job disputes e.g. health & safety & onerous, work stoppage. intoxication.

The Employers' position is that the Union never raised the issue of health & safety. This was not an onerous nor intoxication dispute.

The Union's position was there was no need not to allow longshoremen to park their cars in a historical parking lot to which they've been using for more than 50 years. They expressed the explosions that occurred at Port Chicago. The Union stated they were informed on Friday, when asked if the Dispatchers were notified, they were not. The Union maintained the Employers needed to discuss this issue through the grievance machinery.

Walking Boss Mr. Bowden testified he directed the men to turn to, he was informed they were instructed by their Union not to turn to.

The Employer made the following motion:

1.  ILWU Local 10 officers and members are guilty of violating Section 11 of the Agreement for creating an illegal work stoppage for refusing to turn to as directed by management.

2.  Stand by time from 8:00 am is not payable.

3.  The Union shall cease and desist from any further disruptions and take all substantive issues through the grievance machinery.

DECISION:

The Employers three motions are granted.

*[signature: Thomas Clark]*

Thomas A. Clark
Northern California Area Arbitrator

Dated: November 26, 2019

# EXHIBIT 2

|   |   |
|---|---|
| IN THE MATTER OF CONTROVERSY | NCAA-0022-2019 |
| BETWEEN | INTERIM DECISION |
| PACIFIC MARITIME ASSOCIATION | Of |
| AND | Thomas A. Clark |
|  | Northern California Area Arbitrator |
| INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, LOCAL 10 | Under the Authority of the Pacific Coast Longshore Contract Document 2014-2022 |
| Re: Concord Naval Weapons Station Parking Lot | 11/25/19 |
|  | Concord, California |

I received a call from Jaime Villanueva, PMA, informing the Arbitrator that the Employers were moving under Section 17.61 claiming an illegal work stoppage has occurred on the job at the MOTCO parking lot at the Concord Naval Weapons Station in violation of Section 11 of the Agreement.

**APPEARANCES:**

| FOR THE EMPLOYERS: | Mr. Jaime Villanueva<br>Pacific Maritime Association |
|---|---|
| FOR THE UNION: | Mr. Melvin Mackay, President<br>Mr. Frank Gaskin, Business Agent<br>ILWU Local 10 |
| ALSO PRESENT: | Ms. Barry Thamert, Ports America (Site Manager)<br>Ms. Nuria Peacoat, MOTCO Personnel<br>Colonel Yankee, US Military<br>Lieutenant House, US Military<br>Mr. William Bernard Bowden, Local 91, Walking Boss<br>Mr. Ryan Murphy, Local 75, Business Agent |

ISSUE: Failure to implement award NCAA-0021-2019.

In NCAA-0021-2019, the Area Arbitrator granted the Employers three motions.

1. ILWU Local 10 officers and members are guilty of violating Section 11 of the Agreement for creating an illegal work stoppage for refusing to turn to as directed by management.

2. Stand by time from 8:00 am is not payable.

3. The Union shall cease and desist from any further disruptions and take all substantive issues through the grievance machinery.

17.57 All decisions of arbitrators shall be observed and /or implemented. No decision, interim or formal, can be appealed unless it is observed and /or implemented.

The men were instructed to go to lunch in doing so they failed to return to work after their lunch period was completed.

EMPLOYER MOTION:

1. ILWU Local 10 is guilty of violating Section 17.57 of the Agreement for failing to implement the previous interim ruling and failing to cease and desist disrupting MOTCO's yard operation.

    17.282 If the local grievance machinery becomes stalled or fails to work, the matter in dispute can be referred at once by either the Union or the Association to the Coast Labor Relations Committee for disposition.

2. The grievance machinery has failed to work as outlined in Section 17.282 of the Agreement the local grievance machinery has stalled and the matter shall be referred to the CLRC.

DECISION:

Employers motions 1 and 2 are granted.

*[signature: Thomas Clark]*
Thomas A. Clark
Northern California Area Arbitrator

Dated:  November 26, 2019

# EXHIBIT 3

IN ARBITRATION PROCEEDINGS PURSUANT TO THE PACIFIC
COAST LONGSHORE CONTRACT DOCUMENT BETWEEN THE PARTIES

| | |
|---|---|
| INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, | C-07-2019 |
| | Opinion and Decision |
| Union, and | of |
| | John Kagel |
| PACIFIC MARITIME ASSOCIATION, | Coast Arbitrator |
| Employers. | November 25, 2019 |
| | Palo Alto, CA |
| Re: Interim Area Arbitration Awards | |

APPEARANCES:

For the Union: Frank Ponce De Leon, Cameron Williams, Coast Committee Members.

For the Employers: William Bartelson, Matt McKenna, Contract Administration and Arbitration, PMA

DISCUSSION:

This morning Area Arbitrator Clark found "ILWU Local 10 Officers and Members are guilty of violating Section 11 of the Agreement for creating an illegal work stoppage for refusing to turn to as directed by Management." He ordered the "Union shall

1

cease and desist from any further disruptions and take all substantive issues through the grievance machinery."

Later today he ruled, in a separate decision, that the "Union violated Section 17.57 of the Agreement by failing to implement the previous interim ruling and failure to cease and desist disrupting MOTCO yard operations." He found that the "grievance machinery has failed to work as outlined in Section 17.282. The local grievance machinery has stalled and the matter shall be referred to Coast."

Thereafter, after discussion, the CLRC deadlocked and the matter was referred to the undersigned.

The function of the Coast Arbitrator in the situation where the grievance machinery has stalled is to confirm that that has occurred and to order that the initial decision of the Area Arbitrator be followed if the CLRC deadlocks on the issue. (PCLCD Sec. 17.282) Under that provision, the referral to the CLRC can occur, as here, "at once." This decision is issued after a telephone conference attended by Union and Employer members of the CLRC. The decision in no way reflects any view whatsoever on the merits of the underlying dispute nor the procedural regularity of the interim decisions.

DECISION:

ILWU Local 10, its officers and members, are in continued violation of Section 11 of the Agreement by failing to observe interim Area Arbitrator Clark's interim decisions and are hereby ordered to observe those Awards.

_____

2

Coast Arbitrator